May it please the Court, Max Ray for William Carmickle. When assessing whether an ALJ's conclusion is supported by substantial evidence, the starting point is to look at the question that the ALJ is to ask. And in this case, the key question requires that the ALJ give reasonable deference to the claimant's alleged limitations. The rule is 20 CFR 404.15.29C4. It is on page 8 of the Respondent's Brief. The consistent question for the ALJ is, can alleged functional limitations and restrictions due to symptoms reasonably be accepted as consistent with the objective medical evidence and other evidence? And if that is the case, then they are to be determined to diminish work capacity. Now, in this case, the ALJ found nearly a full range of medium exertion residual functional capacity. He found no evidence to support a medically determinable mental impairment, but now we have the objective testing from Dr. Sladek that significantly changes that calculus. We also have a second physical capacity assessment that that and the first are not consistent with the level of capacity that the ALJ found. They're both well below medium. In fact, the newest one suggests that the claimant began at less than full-time participation. And we finally have the community work assessment. I don't understand how that supports you. It seems the opposite. I'm not hearing you. I'm not sure how that supports you. It seems the opposite since the ultimate conclusion was that he couldn't do full-time work. Well, the conclusion of the ALJ was that he could do full-time. I understand. But you say that the new evidence supports the conclusion that he can't because it says he's supposed to start with part-time work. But that doesn't undermine the notion that he can do full-time work. The ultimate conclusion was he could do full-time work of that evaluator. The physical capacity evaluation suggested that he could become able to do full-time work. But they suggested starting out at something less than that. Would that preclude him from? I don't understand how that undermines the ALJ's conclusion. Well, at the time of the ALJ's decision, there were no limitations of attendance or stamina. And this is a subsequent evaluation that is suggesting that he would be able to work up to full-time. But it suggested going less than that at the beginning, which would suggest that at the prior time of the ALJ's decision, he was not at the level of full-time. And that's bolstered considerably by the community work experience, where he is assigned to half-time work, and he's only able to participate 50% of that to which he is assigned, despite considerable modification of what he was asked to try and accommodate his capacities. So the most telling part of this, with regard to remedy, is the limitation to less than full-time capacity. Because if you accept that the evidence as a whole demonstrates that despite significant activity, he's not capable of sustaining all day, every day work activity, then there are no jobs. Thank you. Counsel, I have a question for you. And that relates to the additional evidence in the Bruce case. Yes. And what standard the district court should use? In the record, the district judge discussed he could do it one way or the other way. He chose one method, and I'm curious your thoughts on that. Bruce tells us that the district court and this court must assess whether substantial evidence supports the ALJ's conclusion, considering the now more expanded record, not just the record that was before the ALJ. So if we go back to the 404-1529-C4 standard, the court should ask whether substantial evidence supports a finding that greater limitations could not reasonably be accepted as consistent with the And that takes us back to the deference that the ALJ is required to give to the claimant's description of sentence and limitations. Does that answer your question, Your Honor? Well, somewhat, somewhat, Counsel. So given that, the end result of this would be what, in your opinion, to remand with direction? If we look at Dr. Sladek's report, it's remand with direction because we don't know what effect that additional writing limitation would have with respect to Step 5. I argue that it would knock out Step 4, but we don't know with respect to Step 5. But if we look at the community work assessment and we look at his history of activity, but not full-time activity, and conclude that he is not in a position to sustain full-time everyday work, well, there are no jobs at Step 5. The vocational expert indicated that one has to be at work to work, and that was the case in Brews. In Brews, the court concluded that a person couldn't sustain full-time and awarded, and that would be the appropriate remedy here. Underline the ALJ's overall decision. I'm sorry, but I've been ill and I'm having trouble with my voice. Is Judge Watford here? Yes. I am on, Judge Berzon. I can hear all of you, but I think we're having trouble orienting the camera so that I appear on the screen. But we're working on that. Now I can see you before I saw some empty chairs. Oh, okay. So now you can see me? Great. The ALJ basically found Mr. Carmichael just simply not credible, largely based on a visit to his house by a broad investigator, I guess, who found that he was doing, or at least reported to be doing, all sorts of activities while he said he was disabled. So how does the later evidence interact with that credibility finding in terms of what we are to? It's a very peculiar business to be taking later evidence and plugging it into a hearing where it wasn't, and making assumptions about what the ALJ would have decided when he didn't. That's the issue. It's very difficult for this case, for the court to fill in gaps when the agency doesn't provide rationale with respect to the later developed evidence. The question of credibility, credibility has to be assessed based on the full record. Yes, the investigators noted that a lot of activity had been done, and it had been done. But was it done on a full-time, sustained basis? You know, if you're capable of part-time light, you can still get a lot done over a period of time. Counsel, doesn't Mr. Carmichael's past work indicate that he's able to do the job? He, okay, are you referring to the step four argument? Yes. The job as performed required greater standing than the ALJ found claimant to have. So as performed is knocked out. What the ALJ found was that he could do the job as generally performed, not as actually performed. And that's where Dr. Sladek's limitation becomes so important, because in the references for the vocational materials, you have to have a higher level of writing capability than he demonstrated. You also need frequent hands, and it's an open question whether he has that hand frequency, based on the physical capacity assessment, the pegboard, and the assembly figures. Okay, if you want to reserve the remaining for Dr. Sladek. Thank you. Thank you. Good morning. May it please the Court. Nicole J. Bailey for the Commissioner. There's no serious dispute that the record before the ALJ, at the time the ALJ issued its decision in April 2011, that that decision was supported by substantial evidence. Now, despite these three new pieces of evidence that were created and submitted after the ALJ issued his decision, the decision is still supported by substantial evidence. Your brief essentially assumed the credibility finding. But how can we assume that in the sense that the, with the new evidence, it could have affected the ALJ if he'd had it? The ALJ's determination of credibility, couldn't it have? The ALJ, the credibility finding is. Or are we supposed to look at the evidence and do our own credibility finding? It's really a mystery. It is, Bruce, it does create problems, I think, for the district courts, certainly for the Commissioner. It's not, it is, there are some reconciliation issues, but the standard of review doesn't change. The standard of review is that if the ALJ's decision is supported by substantial evidence. But what do we, what is the standard of review being applied to? It's not, it's being applied to a hypothetical ALJ decision, or it's being applied to the appeals decision? The, the substantial, the appeals decision, there's no articulation requirement in the appeals decision. That's from the Gomez case and the Taylor cases. We can't look to those, to that decision and say whether or not there was a sufficient articulation. Well, but were those cases in which there was new evidence in which we were supposed to be evaluating the record as a whole? In those cases. And it seems to me that we ought to have an articulation by the appeals board as to why they think the record as a whole, what they think the record as a whole now demonstrates. Otherwise, we're reviewing a vacuum. You're reviewing for substantial evidence. And so, you know, case law does not require any articulation. But substantial evidence is here. Can you answer my question? Are the cases that you cite in cases in which there was new evidence? In Taylor, yes, there was new evidence. And I would have to double check on Gomez. But we really are, and in Bruce itself, Bruce itself is a new evidence case. And in Bruce. I understand that, but that it wasn't the issue in that case. Yes, but in there, they cite with, they cite persuasive, or they cite with approval the Taylor case. So Bruce itself doesn't require any ALJ or any articulation from the appeals council. And that is a new evidence case. So here we're looking at substantial evidence, and there is overwhelming evidence of credibility of the adverse capital. Let me ask you this about the psychologist, Dr. Slatnik. Yes. As I recall, the ALJ found no basis on the record that existed at the time of the hearing to impose any kind of limitations based on the claimant's mental functioning, right? Yes. Dr. Slatnik comes along, and if, at least if he's believed, I think you'd agree that his findings would require factoring in some kind of a mental limitation, right? Yes, but Dr. Slatnik's opinion doesn't hang together with the record as a whole. I would refer this court to an unpublished decision from 2013, where they look at whether or not a decision is at odds. That's the Boyd case, and I have a citation for it. It's not in my brief, but it's the Boyd case, 2013, Westlaw, 1-800-556. And what the court does in that case is it looks whether this evidence is at odds with what's before the ALJ. And here, Dr. Slatnik's opinion is at odds with what's in front of the ALJ, and it's at odds with the record as a whole. At the record as a whole, you see … Well, if something is at odds with something else, then you have to decide which one to believe. At some point you do. And we're supposed to assume that the ALJ would have decided to believe what was already in the record and not Dr. Slatnik for some reason. At some point, this court does have to step in. And that's what Bruce essentially allows this court to do. Bruce invites the court to step in, and what the analysis you really see in these cases is, is this or isn't this consistent? That's what a fact finder's for. I don't understand how we do that. I agree, but after Bruce, that's what the courts are doing. In other words, I don't see how there could be an answer that it's inconsistent with the record before that. That's the question, not the answer. What do we do now? Well, after Bruce, this court, in cases before the district court and in cases before this circuit, the courts are looking into seeing whether there is consistency and whether this evidence is consistent. So I know … All right, so now it's inconsistent. So what do we do next? I think it's inconsistent because substantial evidence supports the ALJ's decision. That substantial evidence still applies. I mean, I can imagine a rationale that would say, look, if you're going to turn the evidence in later, it has to be such as to independently prove your case. Is that essentially what you're saying, that if the new evidence isn't compelling enough to prove its case on its own, then he loses? Because on a procedural ground, I'm trying to think of a theory behind this. Right. And the way I reconcile the cases is you can kind of look as to whether the evidence is clarifying a rebuttal. Now, in the Bruce case, that new evidence basically clarified some medical opinions that were already in the record, and it said, you know, this claimant would miss work days. It said that her limitations had these – she needed these medications. It explained her bipolar disorder. So that's really undermined the substantial evidence. It undermined those opinions that were before the ALJ. Here, this is much more of rebuttal evidence. This is more, we still have this side of the ledger, essentially, that is where the ALJ's decision is supported by the substantial evidence, and you have this new evidence. And as I said earlier, this new evidence doesn't hang together. I mean, while Mr. Carmichael is found in the – Counsel, it's always – I mean, I guess I don't understand your articulation of the standard. If it's just that if the evidence is inconsistent, then somehow the claimant loses. Well, then it seems to me it's always going to be inconsistent. That's why he's putting it forward. It's new evidence, and presumably you had a decision before that was supported by substantial evidence, so of course it's going to be inconsistent. So I guess I don't understand how does a claimant ever prevail if that's the standard? Well, it's not inconsistent in the Bruce case. In the Bruce case, you see these doctors and these medical sources, they really are clarifying what there was before. And they really, really are articulating, whereas in the Boyd case, you still have evidence that was before the ALJ and still have this evidence showing no limitations. Here, in this case, Mr. Carmichael spelled the word world forward and backward very quickly in his examination with Dr. Stoltzfus. But yet now he's seen in the one percentile for spelling. It doesn't make sense. And this brings me to another point, which is that the credibility finding is very strong here. Counsel, on credibility, doesn't the entire record have to be taken into account? So for us to say anything on the credibility, we're not a trier of fact, and we haven't seen these people. Well, with credibility, there is the harmless error analysis as well. And that is, even if the court can reject some reasons, but overall the credibility analysis can be held. Here we have evidence of the cooperative, our inspector general came in, they saw him operating a Kubota tractor. There's the very thin record that's before the ALJ. Now this man had money. He bought a $25,000 tractor that he was seen operating. He came into a substantial, his wife, or his partner, came into a substantial inheritance with which they bought a four-acre property, had horses. He had money to get treatment if he needed it, but you don't see treatment notes. You don't see him going in and getting any sort of treatment for these now allegedly disabling conditions. Instead, he's going out, he's working on his barn. He demolished the interior of a barn with his hands. His hands that he now alleges render him in part disabled. So this credibility analysis is still extremely strong. And what's the difference between this and this? And we don't know. We don't know exactly what he's doing, but he's also working on a Porsche. When the investigators go in, they see a Porsche on the jacks that he's working on, because he does have a lot of experience with cars. The record even shows that he may be working under the table in some cases, working on cars. So it doesn't make sense. This credibility analysis, it still is valid. So your point would be that despite this late information that comes in, there's still substantial evidence to support the ALJ's decision? Yes, exactly. And on that basis, this Court should consider affirming? On this basis, substantial evidence still supports the ALJ's decision, despite all these pieces of new evidence, and especially read in with the credibility finding. And on that ground, we ask this Court to affirm. Thank you. There's no basis to assume that the ALJ's decision was supported by substantial evidence in the record before the ALJ. There's no reason to consider that. Why are you not challenging that? Pardon me? You haven't challenged that. Well, the substantial evidence review question is a court review standard, and there is no court review constrained to the limited pool of evidence that was before the ALJ. And so there's no basis to assume one way or the other. There's no reason to make a finding with respect to substantial evidence on the limited pool, because that's not the question before the Court. The issue of Sladek's report, he's the first and only full neuropsychological assessment that does objective testing of these things. Could you explain to me something? Sure. Something I don't understand. The new evidence was all actually acquired after the ALJ opinion. Yes. But the reason it's allowed is because it pertains to the relevant time period. Is that why? Yes. And by the relevant time period, does it end at the time of the ALJ hearing? Yes. So these studies that were done after the ALJ hearing still pertain to the period before the ALJ hearing? There is no reason to, there's no evidentiary basis to consider that claimant was any worse later. That's the basis. But the important point is that although they directly related to a time period afterwards, they were introduced for purposes of the time period before. Yes. After the ALJ's decision saying he could work, he went to vocational rehabilitation, and this evidence was generated in connection with that attempt to become rehabilitated. Okay. Thank you. Thank you very much. Thank you for your help in an interesting case. Carvacol versus COVID is submitted.
judges: Berzon, Watford, Sammartino